

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Evan T. Shea<br>Assistant United States Attorney<br>Evan.Shea@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4982<br>MAIN: 410-209-4800<br>FAX: 410-962-9293 |

June 11, 2017

L. Barrett Boss, Esquire
Cozen O'Connor
1200 19th Street, N.W.
Washington, D.C. 20036

    Re:    *United States v. Calvin Ayre,*
           Criminal No. CCB-12-087
           CCB-17-0372

Dear Mr. Boss:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, Calvin Ayre, (the "Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **July 8, 2017**, it will be deemed withdrawn. **The plea agreement is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The terms of the Agreement are as follows:

### Offense of Conviction

      1.    The Defendant agrees to waive indictment and plead guilty to a one count Information which will charge him with the misdemeanor of Accessory After the Fact to the underlying offense of Transmission of Gambling Information, in violation of 18 U.S.C. § 3. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      a.    the crime of Transmission of Wagering Information in violation of 18 U.S.C. § 1084 had been committed by a representative of Bodog Entertainment Group, a corporation that was engaged in the business of betting and wagering; and

      b.    the Defendant knew that this crime had been committed and that a representative of Bodog Entertainment Group had committed it; and



June 12, 2017
Page 2 of 10

    c.    the Defendant thereafter intentionally received, relieved, comforted, or assisted representatives of Bodog Entertainment Group to hinder and prevent Bodog Entertainment Group apprehension, trial, or punishment for the crime of Transmission of Wagering Information in violation of 18 U.S.C. § 1084.

The elements of the underlying crime of Transmission of Wagering Information in violation of 18 U.S.C. § 1084.

    a.    Bodog Entertainment Group was engaged in the business of betting or wagering on a sporting event; and

    b.    Bodog Entertainment Group participated in a wire communication in which information assisting the placing of bets was transmitted; and

    c.    The wire communication in question was made across state lines or from the United States to a foreign country.

### Penalties

3.    The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: one half the maximum term of imprisonment prescribed for the punishment of the underlying offense – Transmission of Wagering Information in violation of 18 U.S.C. § 1084; because the maximum sentencing for Transmission of Wagering Information in violation of 18 U.S.C. § 1084 is a two years term of imprisonment and a fine of $250,000, the maximum penalty for this Accessory After the Fact offense is one year imprisonment and a fine of $125,000, or twice the Defendant's gain or the victim's loss from the offense, a special assessment of $25.00, which will be due and should be paid at or before the time of sentencing, and a term of supervised release of one year. The Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).



June 12, 2017
Page 3 of 10

4. The Defendant understands that by entering into this Agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. The Defendant and his Counsel would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph set forth below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.



3

June 12, 2017
Page **4** of **10**

       h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

       i.      The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

      5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

      6.      This Office and the Defendant (together referred to as "the Parties") understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt.

      7.      The Parties understand, agree and stipulate to the following applicable sentencing guideline factors:

      a.      The Parties stipulate and agree that **the base offense level for the underlying offense is twelve (12)**, pursuant to U.S.S.G. § 2E3.1(a)(1).

      b.      The Parties further agree that there is a **six (6) point reduction** because the offense is Accessory After the Fact, pursuant to U.S.S.G. § 2X3.1(a)(1).

      c.      Acceptance of Responsibility. This Office does not oppose a **two-level (2)** reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court,

4

June 12, 2017
Page **5** of **10**

this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Accordingly, the final adjusted offense level is expected to be a **four (4)**.

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

10. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **1 year unsupervised probation and a fine of $500,000, which represents twice the gain to the Defendant,** is the appropriate disposition of this case. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Forfeiture

11. The Defendant agrees that he has not made, and will not make, any claim to the $66,113,389.78 previously seized and forfeited funds listed in exhibit 1 to this agreement.

### Obligations of the United States Attorney's Office

12. At the time of sentencing, this Office will recommend a sentence of **1 year probation and a fine of $500,000 and** will dismiss Counts One and Two of the Indictment now pending against the Defendant and Bodog Entertainment Group.

13. This Office agrees that the probation would be "unsupervised" because Mr. Ayre is neither a citizen nor resident of the United States. In addition, the mandatory drug testing requirement in 18 U.S.C. § 3563(a)(5) should be waived because the defendant is not physically present in the United States and there is a low risk of future substance abuse by the Defendant. This Office is unaware of any losses suffered by third parties and thus there is no basis to seek an order of restitution in this case.

5



June 12, 2017
Page **6** of **10**

14. This Office agrees not to arrest the Defendant from the time of his entry into the United States for purposes of entering a plea of guilty pursuant to this agreement until the entry of the Defendant's plea in court. Should the Court reject the Defendant's plea, this Office agrees not to arrest the Defendant for 14 days following the rejection of the plea hearing to allow him to travel back out of the United States, and both parties waive their right to request a presentence report.

15. This Office agrees not to oppose a request by the Defendant under Federal Rule of Criminal Procedure 43 for the arraignment, plea, and sentencing to occur by teleconference without the Defendant physically present. This Office likewise agrees not to oppose any request by the Defendant for the Court to conduct the guilty plea and sentencing at the same hearing.

16. Immediately after sentencing, this Office agrees to rescind any red notice or other arrest warrants that may have issued seeking the Defendant's arrest and to take appropriate steps to inform other agencies within the government that the defendant is no longer a fugitive.

17. If the Defendant arranges an additional payment of $100,000 at or before the time of the Defendant's sentencing, this Office agrees to seek an amended forfeiture order pertaining to the domain name bodog.com. The Parties agree that the requested amended forfeiture order will substitute the $100,000 payment for the domain name, and will forfeit the $100,000 in place of the domain name. The requested amended forfeiture order will further transfer the domain name of bodog.com to the Defendant or to an individual or entity designated by the Defendant or counsel for the Defendant.

18. The Parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background and conduct.

### Waiver of Appeal

19. In exchange for the concessions made by this Office and the Defendant in this Agreement, the Parties waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant

6



June 12, 2017
Page 7 of 10

reserves the right to appeal any sentence more severe than **1 year probation or a $500,000 fine**; and (ii) this Office reserves the right to appeal any term of imprisonment less severe than **1 year probation or a $500,000 fine**.

        c.        Nothing in this Agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Obstruction or Other Violations of Law

        20.        The Defendant agrees that he will not commit any offense in violation of U.S. federal, state or local law between the date of this Agreement and the sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this Agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report (in the event that a presentence report is prepared), or (iii) commits any offense in violation of U.S. federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this Agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this Agreement, and it will also be free to make sentencing recommendations other than those set out in this Agreement. As with any alleged breach of this Agreement, this Office will bear the burden of convincing the Court of the Defendant's violative, obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of his obligations under the Agreement pursuant to this paragraph.

Court Not a Party

        21.        The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the

Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement, and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

6/12/2017
Date

By: _____
Evan T. Shea
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Advisory Guidelines Stipulation and the Statement of Facts with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/21/17
Date

_____
Calvin Ayre
Defendant

I am counsel for the Defendant, Calvin Ayre. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

6/23/17
Date

_____
L. Barrett Boss
Counsel to Calvin Ayre

8

## ATTACHMENT A:
## STATEMENT OF FACTS

*It is agreed and stipulated that were the Government to proceed to trial in this case, it would prove, beyond a reasonable doubt, by admissible testimonial and documentary evidence the guilt of the Defendant Calvin Ayre on the charge of Accessory After the Fact to the underlying offense of Transmission of Wagering Information, in violation of 18 U.S.C. § 3. The Defendant agrees to the truth of the summary of evidence set forth below and acknowledges that it does not represent all the evidence the Government would have produced had the case proceeded to trial.*

From at least in or about June 2005 through and including September 2006, **Bodog Entertainment Group S.A.** ("BEG") was a company, formed in Costa Rica, that assisted in the offering of sports betting over the internet, under the "Bodog" brand, through a website registered as bodog.com. The company and the business that it conducted were in substantially continuous operation for that entire period. In September 2006, BEG became inactive as a Costa Rican corporation, and was eventually dissolved, but sports betting continued to be offered under the "Bodog" brand at least until December 2011.

During at least the period of operation described above, BEG provided marketing for the Bodog brand. The companies associated with the Bodog brand had employees located in Costa Rica and elsewhere (other than in the United States), who conducted, managed, supervised, directed, and owned all or part of the internet gambling business described above. Specifically, during this period, BEG provided marketing assistance to entities that accepted funds from people located in Maryland and elsewhere ("gamblers") to open accounts. These gamblers then used the funds in these accounts to wager money on the outcome of sporting events, hoping to win money. Gamblers with a positive account balance that included winnings from such bets routinely requested a payout of funds by check or by electronic funds transfer to another account. This activity constituted the business of betting or wagering information on a sporting event. Furthermore, the representatives of the Bodog brand participated in a wire communication in which information assisting the placing of bets was transmitted, which was made across state lines or from the United States to a foreign country.

The Defendant agrees that the crime of Transmission of Wagering Information described above had been committed and that a representative of the Bodog brand had committed it. Furthermore, the Defendant intentionally received, relieved, comforted, or assisted representatives of the Bodog brand to hinder and prevent the apprehension, trial or punishment of representatives of the Bodog brand for the crime of Transmission of Wagering Information in violation of 18 U.S.C. Section 1084.



June 12, 2017
Page **10** of **10**

    I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I acknowledge that it is true and correct.

6/21/17
Date

Calvin Ayre

    I am Calvin Ayre's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

6/23/17
Date

L. Barrett Boss

10

## Cash in Processor and Reserve Accounts Leadsheet
(Stated in USD Dollars)
(Unaudited)

| | Functional Currency - USD |
|---|---:|
| Nucharge | $ 2,610,827.00 |
| NuCharge Reserve | $ 3,516,615.34 |
| Intacard | $ 2,175,745.38 |
| TopStatus Trading Co | $ 6,376,649.44 |
| TopStatus ACH - USD | $ (82,482.53) |
| SMS | $ 3,041,479.61 |
| SMS Reserves | $1,427,217.99 |
| JBL (Cheques and DBT) | $ 13,163,896.64 |
| Relecomm Redwood | $ 983,205.26 |
| Relecomm Redwood Reserves | $ 1,128,722.72 |
| UseMyWallet (QuickTender) | $ 436,852.53 |
| Direct Channel | $ 2,113,358.12 |
| Burstpay | $ 7,641,912.54 |
| Burstpay Reserves | $ 212,912.68 |
| Ewallet Express Clearing | $ 3,910,733.70 |
| Ewallet Express Reserves | $ 1,421,768.80 |
| Citadel | $ 913,487.99 |
| Firepay Reserve | $ 2,233,425.25 |
| Debitran | $ 4,635,236.01 |
| GFSI ACH (GAC) | $ 7,373,186.72 |
| GFSI Reserves | $ 878,638.59 |
| **TOTAL** | 66,113,389.78 |